So we'll hear argument next in E.J. Brooks Company v. Cambridge Security Seals. May it please the Court, my name is Daniel Goldman. I'm representing E.J. Brooks, who is the plaintiff. I'll call E.J. Brooks Titan. I'm going to address two issues for the Court. The first is that the District Court's opinion denying prejudgment interest should be reversed. There is no basis, let alone a concrete basis, for the District Court's holding that the interest. The words prejudgment interest were never uttered during the trial. Titan's expert provided no testimony on the issue of prejudgment interest. Prejudgment interest was not referenced on the verdict form. The District Court pointed to one routine jury instruction for its finding, which was that, quote, damages should be assessed from the date of the misappropriation or unfair use through the verdict, unquote. That instruction does not mention prejudgment interest. As this Court held in the Greerlinger case, there is nothing in that instruction that one could reasonably believe would lead the jury to engage in, quote, complicated computations of interest. The verdict itself provides no indication that the jury considered prejudgment interest. The verdict was not a large amount. The verdict, what the jury did was it cut in half the lower range of Titan's expert's damages number. Titan's expert did not calculate an interest component. What Titan's expert did was figure out the time that Cambridge saved by misappropriating Titan's trade secrets concerning the design of three manufacturing processes. It was a fixed amount. The expert did not gross that figure up through the time of trial. So it was avoided development costs. That was the basis for the damages, right? That's correct, Your Honor. How does the deprivation of that, to make a party whole, you need prejudgment interest? Usually, at least in Connecticut, in the prejudgment interest situation, you've been denied something for a while which was of value to you, and you would have been able to invest it or gain some value from that during the period it was denied. How is that measure of damages in this case relevant to that thought behind prejudgment interest to make you whole? Well, I think you have to look at the CPLR. The CPLR 5001A provides that interest shall be recovered. I know that's what the statute says. I'm trying to think about the reason for the statute, though. It's usually if somebody takes something from you you should have had and it has some value during the period it was deprived to you, you were deprived of it. When you have this kind of damages here, though, of avoided development costs for the other party, how do you have to be made whole for that period of time after it happened? Well, I think you first have to start in the analysis that the jury found that Cambridge misappropriated Titan's property. And when they took the designs, they essentially misappropriated the designs for these manufacturing processes and used those to hit the ground faster than they otherwise would have. At the time they started to use those trade secrets, which in February of 2011, at the time they, by law, they owed Titan money. So as they utilized these trade secrets So why doesn't the damages award make you whole for that, though? Because they got the benefit of the trade secrets and they owed money to Titan at the time they misappropriated the trade secrets. And so the damages were incurred as they avoided costs, but they didn't avoid costs all the way up until the time of the trial. So they owed money as they avoided costs because they were misappropriating the design specifications, but that ended before the trial. They should have paid money to Titan as soon as they avoided the costs, as soon as they misappropriated the trade secrets. They did not. We had to go through a trial, get a verdict, and get a judgment. They should have paid interest all the way up through the time of the verdict to compensate Titan for the damages that it suffered under the CPLR. But didn't the damages instruction say that up to the time of the verdict, your award damages for their loss up to the time of the verdict? It did say that, but if you look at what the jury did and what was before the jury, I think there is zero chance this jury calculated prejudgment interest. They didn't know what an interest rate was. They didn't know they were supposed to calculate prejudgment interest. Titan's expert simply calculated the difference between what it should have taken Cambridge to come up with his manufacturing processes over a number of months and the time it actually took to come up with, the delta, it was a fixed amount. It wasn't grossed up until the time of the trial. And in fact, what the jury did was cut in half the lower range of Titan's expert's damages analysis. So I think there is zero chance this jury actually took into consideration the concept of prejudgment interest. And I think on this record that Titan is entitled to an award. In terms of the date, I think it's appropriate to remand to the district court to set the date. I'd like to address one other issue, which is avoided cost as a measure of damages. Here where the jury found that Cambridge misappropriated Titan's design specifications for a manufacturing process, avoided costs were legally proper and the most appropriate measure of damages. And I want to start with the restatement of unfair... Does New York law apply? New York law does apply. What New York cases say that avoided cost is the appropriate measure of damages for your claims of misappropriation and unfair competition? So we could not, and neither could Cambridge, find a New York case right on point that says in this circumstance one gets avoided cost. But the New York courts follow the restatement of unfair competition. And I'll cite to you the Wiener case, the case from the Appellate Division, First Department, 241 AD 2nd, 114, at 123,000. And if you look at the language of the restatement of unfair competition third, it states that courts have recognized at least four methods of measuring damages in trade secret cases. In one of those is called, in one of those measures, quote, the savings to the defendant that is attributable to the use of the trade secret. This method compares the cost to defendant of achieving the same result with and without the improper use of the trade secret and awards the difference to the plaintiff. In comment F of that unfair competition restatement provides, if the benefit derived by the defendant consists primarily of cost savings, such as when the trade secret is a more efficient method of production, the, quote, standard of comparison, unquote, measure that determines relief based on the savings achieved through the use of the trade secret may be the most appropriate. That's what the expert did in this case, and that was the basis for damages. And I think the court in the Mattarisi case effectively followed the lost, the, this method of, of. That's your best case. That is the best case from the Second Circuit. However. From the Second Circuit. What's the 1946 case? That is correct. But it, but. It dates the restatement. Indeed it does. But there's the, every circuit that has looked at this issue has found that avoided costs are awarded. The Bourne case from the Ninth Circuit, the Warren case from the Third Circuit, which held, quote, a distinction between profits and savings is wholly without merit where the thing appropriated or infringed is a process, which was the case here, rather than a manufactured article, the profits are simply measured by the savings using the standard of comparison computation. So this is widely done. It's widely adopted, particularly when, when a case deals with a manufacturing process, such as this case, the primary benefit to save time and time is money. Therefore, it's appropriate to calculate the savings in time and otherwise by misappropriating the manufacturing process. Is that a, is that some sort of a proxy for the loss or what is that? So the case is saying, as Judge Preska found below, that it's just another way of looking at profits, that Cambridge profited, they effectively profited by the time savings in misappropriating these designs, by getting this many month head start. It's a form of profits or it's a form of losses. It's really, it's a semantic issue, but I don't think the semantics are relevant. Sounds more like unjust enrichment. It is a form of unjust enrichment. Yes, Your Honor. My time is up, unless you have any further questions. Thank you very much. Good morning, Your Honors. Howard Chu from Kazimierz Benson Towers and Friedman on behalf of defendant Cambridge Security Seals. Let me begin, I guess, first with the interest question, which Judge Roney asked, which I think the answer to is that the purpose of the statute is to fully compensate a plaintiff for its losses. So compensatory damages sometimes fall short of that. If you breach a contract, you don't buy a million dollars worth of widgets back in 2012. You get a judgment for a million dollars. You have to be grossed up, like Mr. Goldman said, to the time of the verdict. But here, the measure of damage for which they sought, which is a proxy for, I guess, some sort of losses or other profits, was the avoided costs, every avoided cost you have saved up until the date of the verdict. And that's what they got. They got full compensatory damages. Now, the cases don't say that you need to concrete proof that interest was awarded. The cases say you need proof that you've been fully compensated. And if you haven't been fully compensated, then you get interest. But if you have been fully compensated, like the Vermeer case in the First Department, then that's it. Any award on top of full compensation through the date of the verdict would be, by definition, either a double recovery or windfall or some sort of punitive measure, which you don't see anywhere. If I may turn- But the development cost ended at some point when they started production, say two years ago. In other words, they allegedly steal the method, the manufacturing process, and they put it in place, and it starts producing these ties two years ago. That ends once the button's pushed on the line that starts producing the ties. But what about the two years after that, when there's no more theft of development information? Shouldn't there be a period of time that's covered by the prejudgment interest? I guess theoretically there could be. Let me first state, however, that it's not necessarily the case that avoided cost ends when you push the button, because there's a lot of tweaking that goes into these machineries. But there was no proof at trial as to avoided cost ending at a certain point in time. The case that they put on was, through their experts, these are the avoided costs through the date of the trial. And that's what they got. Now, avoided costs themselves, Mr. Goldman said, are widely granted. Not true. Judge Kerr, you asked, is there any case ever awarded avoided costs? We haven't found any. There are a couple, but if anything, it's a measure of last resort. This court has repeatedly said, we'll deal with the Mattarese case from the 1940s in a moment. But in Vermont Microsystems, in AFA Tours, Your Honor, Judge Kerr, you were on that matter. Electro Miniatures, Softel, and Linko, which is not a Second Circuit case, was Judge Shindlin's case where she discussed specifically this very question. What is the appropriate measure of damages in a trade secret case, in a misappropriation case? And a difficult case like this one where the plaintiff ceased operations, so it didn't have any losses that it could demonstrate. And the plaintiff didn't really fully commercialize the item. So there was a question as to, should we use the losses, which may not be enough? Should we use the profits, which may not be enough? Should we use some combination? And Judge Shindlin said, the measure of damages in New York for a misappropriation case are the plaintiff's losses, the defendant's profits. And if failing that, if there's not enough proof for either one of those, the fallback is what's deemed a reasonable royalty. That was the holding in the Vermont Microsystems case, which was applying California law. But it was also applied in the Softel, Electro Miniatures, all these other cases in the Second Circuit, and Judge Shindlin and Linko. If you can't prove the traditional measures of damages, which are concrete, because they're designed to compensate you for the loss you sustained. So the first thing we do is we look at, what were your losses? Did you have any loss sales? If that's difficult, we look at what the defendant gained. What profits did you have? We'll award those profits, okay? No case, no case in New York or in the Second Circuit or elsewhere as far as we've been able to see, has allowed someone to walk into court and say, I'm not going to prove what my losses are. I'm not even going to tell you what they are. I'm not going to base damages on what the defendant's profits were, which were ascertained in this case and quantified. And I'm not going to seek a royalty on any of that. What about a New York bank note? A New York bank note case? So, a 1905 case from the New York Court of Appeals. I'm not familiar with that case, Your Honor. Okay. Sorry. You didn't argue that case. You didn't argue that case. And what about your adversary's argument that, as a general matter, the New York courts seem to have adopted the restatement on unfair competition, which seems to go against or undermine your argument? Well, I don't believe it undermines the argument. I think in a situation where it's difficult to quantify actual damages, actual losses, or the defendant's profits, then you look to other factors. The restatement lists avoided costs as one of many factors that need to be considered. No case has ever said you can walk into court and only use a hypothetical avoided cost measure of damages. This is a new theory. And now the court below based its decision to go this route and accept this path because she found that Dr. Vigil, their expert, testified that it was the most appropriate measure of damages in this case because- Well, he did not have access to all the data. He did have access to all the data. We produced every single invoice, every purchase order, every single piece of information on every customer that CSS ever sold a seal to. And they had all that information. Now, they didn't want to prove those damages. There's evidence in the record that they started to compute those damages, but they didn't do so for two reasons. One, the number would have been much smaller than the multi-million dollar avoided cost measure of damages. And secondly, if they put in evidence of their financial losses, Judge Prescott said that we could put in evidence that those losses were caused by other factors. For example, the fact that they were charging higher prices, had poor quality seals, and the like. So by choosing avoided costs, they avoided having to deal with those issues. But they had losses. And we had profits. We had gross profits. At net, we actually lost money. We didn't have any earnings at the end of the day, net income. But there were numbers from which a reasonable royalty could easily have been calculated. The Mattarese case, again, it's 40 to 50 years old. It's not a trade secret case. It is an unjust enrichment case. The cases that have followed have all adopted plaintiff's losses, defendants' profits, or a reasonable royalty. And a reasonable royalty is not a royalty. In the Vermont Microsystems case, the court said, you can't just come in and say, look, this is what I would have charged him as a royalty. Because it's too speculative. So it has to be a reasonable royalty. It has to be tethered to some objective criteria. And then the court looks at the same factors that New York courts look to in a restatement. Excuse me. If the court looks at the Vermont Microsystems case, you'll see the factors are very similar to those set forth in the restatement in New York. So this circuit has not recognized the avoided cost form of damages. If I may turn quickly to the other instruction which we challenge on appeal, which were the jury instructions on causation and proximate cause. The jury was having a difficulty with injury. They said, what is injury? They sent a note back at the end of the trial saying, what is injury to Titan Brooks? What does that mean? Because it was one count for which they didn't recover. It was a conspiracy count, and it's separately included as an element of the claim requirement to prove injury. And the jury said, what does that mean? So the court said, that means, injury means that there was proximately caused injury. And then referred them to avoided cost as the measure of damages. And we think that that conflated injury with the measure of damages for injury. And if you look at the- I'm sorry. Was the causation charge objected to? Well, we objected to the entirety of the charge during trial, but we did not specifically object on these grounds to that causation charge at the time. But once the jury came back and said, what does injury mean? We asked the court to give them a charge that says, injury means anti-competitive injury, some financial injury that they have to show before they can go to the measure of damage, before they can use this other theory. Did your proposed charge at that time talk about causation? Our proposed charge, our proposed charge, it's in the colloquy, which is in the appendix which we cite to. And we said that they have to show a connection between the avoided cost or the misappropriation and their injury. There are two cases that we cite in the brief, Your Honor, where we discuss how you cannot assume injury. You cannot assume damages. There's a Supreme Court case which we cite. There's a New York Court of Appeals case that we cite, Michael Cosmetics, the Straus versus Notasimi. These cases say, if you have a case like Electro Miniatures in the Second Circuit, where the plaintiff and the defendant are the only two people in the country that manufactured this item, the plaintiff is the only one who manufactured it, then your gain or your avoided cost is necessarily my loss. But here you have multiple steel companies. The fact that our- They did not show approximate cost. My recollection is that was not raised. That was not an argument at trial. It only came up when the jury came back and said, we don't know what injury means. And the court refused to give a charge to clarify that it was anti-competitive or a financial injury that was sustained. Now, if I may, I see my time is up. Can I just address one last point? On the triplication of damages, Your Honor, this seems to be a dispute between us. I know, Judge Kerr, you run the Gentile case years ago, which was followed later by the Conway case. And the debate here seems to be, is this Conway or is this Gentile? Where in Conway, the jury came back with an award of $357,000 worth of damages, and they doubled it. And they told the court, we meant to give the $715,000 award. And in the Gentile case, the jury gave $150,000 and they split it in half, 75-75. One on a section 1983 claim and one on a malicious prosecution claim under state law. And the question is, when the jury says, we want to give more, how do you deal with that where there's one injury? When the jury's asked, do you want to give more that does not duplicate the amount that you have already awarded? Correct. Now, in this case- That's what the jury verdict form asked. Correct, but in this case, it's automatically duplication. The same way in Conway, the court figured out that the way they calculated the damages, $357,000 for the breach of contract and $357,000 for the negligence case, it had to be the same number. So too here, the 1.3 has to be the same number, because the measure of damages for each claim was avoided costs. So it's impossible that they awarded different amounts and that it was not a duplicative injury. That is not subject to any dispute. The only question is, what do you do after you realize the jury made a mistake? Now, the judge in her decision post-trial, she said, well, even if they duplicated, it's clear to me from their body language and their response to my question that they meant to award 3.9 million. So I'm going to give 3.9 million on the trade secret claim, which is the most difficult to prove. And I'm going to nullify the jury's verdict on the unfair competition and unjust enrichment claim. We feel that the court had no authority to do that. And it was speculative, because there is evidence in the record to show that the damages were 1.3. One of these machines cost $450,000, a brand new machine with labor cost $450,000. Like Mr. Goldman said, we took, or we made three machines, we have three machines. 450 times 3 is about 1.35. Jury could have easily said 1.3, and we want to give three times. But we can't do it, as Conway says, it doesn't matter, regardless of the jury's intentions, if there's only one injury, it can only be compensated once. Thank you very much. Thank you, Your Honor. Mr. Goldman, you have one minute. On proximate cause, Judge Preska held that Cambridge did not raise the issue, waived it. Didn't raise it at the directed verdict before trial, after close of evidence, waived it. There were at least three different instructions on proximate cause. They're in the record. Just for one example, quote, the first type, compensatory damages are intended to compensate a plaintiff for any injury proximately caused by a defendant's conduct. And there are at least two other specific instructions on proximate cause. On this issue of duplicative damages, the verdict forum said don't duplicate damages. The jury charge said don't duplicate damages. The judge specifically polled the jury after the verdict and said, did you duplicate damages? And the foreman said, no, we meant to award $3.9 million. This case is really no different than the Indue Craft case, Second Circuit 1995, where the court said it's equally rational to believe that the jury found that the plaintiff suffered $3.25 million of damages. And merely allocated that amount between the two different causes of action. The standard is if there's any possibility of non-duplicative award, that is enough to sustain a jury verdict. Finally, on the issue of avoided cost, it was very difficult to prove Tidens lost profits, because it's always difficult in a trade secret case. Cambridge is a startup that had no profits. So avoided cost, even in the theory that you have to show that you can't prove profits on either side, avoided cost was an appropriate measure. The reason why we, and I just start to think about this as I heard Mr. Hsu argue, wouldn't want to certify that particular question? Because the New York courts follow the law of the restatement of unfair competition. I think it's clear that this is how the Court of Appeals would come out. And also, the law- Mr. Hsu points out that in the restatement itself, it lists avoided cost as one of the factors, but not as a dispositive way of determining damages. Well, it states that if the trade secret is, if the benefit derived by defendant consists primarily of cost savings, which was this case, such as when the trade secret is a more efficient method of production, which is this case, the standard of comparison measure that determines relief based on the savings achieved through the use of the trade secret may be the most appropriate. It was the most appropriate here. That's from the restatement of unfair competition. New York follows the restatement of unfair competition, so I don't think there's any question that the Court of Appeals would likewise follow that in this case. And it's also, I think the Court of Appeals would also look to the other circuits, which uniformly held as an appropriate measure of damages, particularly when the issue is a manufacturing process. When the principal benefit is savings, time savings. It's a startup that saved time. Time is money. It's not appropriate in every case, but in this case, it was the most appropriate. So the best data point for us in determining what the New York Court of Appeals would do is a restatement. Correct. Thank you very much. We'll reserve the decision.